# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS

Filed: January 14, 2021

```
* * * * * * * * * * * * * * *   *
Z.E., a minor, by his mother, CRYSTAL   *      No. 16-706V
ECKHART,                                *
                                        *      Special Master Sanders
              Petitioner,               *
                                        *      Attorneys' Fees and Costs;
 v.                                     *      Reasonable Basis; Diphtheria-Tetanus-
                                        *      Pertussis Vaccine ("DTaP"); Hepatitis B
SECRETARY OF HEALTH                     *      Vaccine; Pneumococcal
AND HUMAN SERVICES,                     *      Conjugate Vaccine ("PCV"); Polio Vaccine
                                        *      ("IPV"); Encephalopathy; Fever; Seizures;
              Respondent.               *      Speech/Developmental Delay; SCN1A Gene;
* * * * * * * * * * * * * * *   *      Dravet's Syndrome.
```

*Michael G. McLaren*, Black McLaren, et al., PC, Memphis, TN, for Petitioner.
*Kimberly S. Davey*, United States Department of Justice, Washington, DC, for Respondent.

## ATTORNEYS' FEES AND COSTS DECISION

On June 16, 2016, Crystal Eckhart, on behalf of her minor son Z.E., filed a petition for compensation under the National Vaccine Injury Compensation Program[1] ("Vaccine Program" or "Program"). Pet. at 1, ECF No. 1; 42 U.S.C. § 300aa-10 to 34 (2012). Petitioner alleged that Z.E. developed an encephalopathy, or in the alternative, fever, seizures, speech/developmental delay, and/or other injuries, as a result of the Diphtheria-tetanus-pertussis ("DTaP"), Hepatitis B, pneumococcal conjugate ("PCV"), and polio ("IPV") vaccines he received on January 31, 2014. Pet. at 1. On August 16, 2019, I granted Petitioner's motion to dismiss for insufficient proof. Dismissal at 1–2, ECF No. 50.

On September 30, 2019, Petitioner filed a motion for attorneys' fees and costs, seeking $64,345.30 in attorneys' fees and $14,616.58 in costs. Appl. for Fees and Expenses, ECF No. 55. On October 2, 2020, Petitioner filed a supplement to her original fee application requesting an additional $4,561.40 in attorneys' fees and $6.00 in costs. Supp. Appl. for Fees and Expenses at 2–3, ECF No. 59-1. Petitioner requests a total of $68,906.70 in attorneys' fees and $14,622.58 in costs. *Id.* Respondent opposes Petitioner's request for attorneys' fees and costs incurred after April 26, 2019, and argues that reasonable basis ceased to exist when Petitioner's counsel discussed genetic testing results with their expert witness. Resp't's Resp., ECF No. 57. Petitioner counters that reasonable basis existed throughout the case, and that any delay in dismissing the case was

---

[1] National Childhood Vaccine Injury Act of 1986, Pub L. No. 99-660, 100 Stat. 3755 ("the Vaccine Act" or "Act"). Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

because of careful diligence. Pet'r's Reply, ECF No. 58. For the reasons stated below, I find that Petitioner's claim lost reasonable basis on May 6, 2019, and therefore, I will grant-in-part and deny-in-part Petitioner's motion.

## I.   Factual and Procedural Background

### A.  Filing the case and initial litigation

After initiating this case, between July 21 and July 28, 2016, Petitioner supported her claim by filing an affidavit and medical records on behalf of Z.E. Pet'r's Exs. 1–13, ECF Nos. 7–8. In late July 2016, Petitioner filed her statement of completion which affirmed "[a]ll relevant medical records known to Petitioner have been received and filed with the Court. Should Petitioner become aware of any additional records, Petitioner will obtain and file them with the Court." ECF No. 9 at 1.

Following Petitioner's statement of completion, Respondent opposed compensation in his Rule 4(c) report, filed on October 19, 2016. Resp't's Report, ECF No. 13. Subsequently, a Rule 5 status conference was held. *See* Minute Entry, docketed Oct. 25, 2016. Afterwards, Petitioner withdrew her Table injury claims and notified the Court she intended to proceed only on causation-in-fact claims. ECF No. 15.

On January 19, 2017, Petitioner filed an expert report from Dr. Marcel Kinsbourne. Pet'r's Ex. 14, ECF No. 19. Respondent filed an expert report from Dr. Gregory Holmes on July 6, 2017. Resp't's Ex. A, ECF No. 26. Due to an error in filing, Respondent re-filed Dr. Holmes' expert report on March 22, 2019. Resp't's Ex. A, ECF No. 30-1.

### B. New information revealing SCN1A mutation/Dravet's syndrome and Petitioner requests dismissal

On June 19, 2018, Z.E. underwent genetic testing for the SCN1A gene. Pet'r's Ex. 37 at 1, ECF No. 48-1. The results were reported on July 4, 2018, and they revealed that Z.E. possessed a pathogenic variant of the SCN1A gene.[2] *Id.* Billing records reveal that on July 9 and 10, 2018, Petitioner's counsel conferred with his client about "more upcoming appointments and test results" and "condition and symptom development and progression." ECF No. 55-2 at 19. Petitioner's counsel also reviewed new records, studies, and caselaw sent to him by his client. *Id.*

On August 2, 2018, Dr. Richard Tang-Wai, Z.E.'s treating pediatric neurologist, diagnosed Z.E. with Dravet's syndrome.[3] Pet'r's Ex. 32 at 65, ECF No. 42-1. As the record from this visit reveals, Dr. Tang-Wai spent more than thirty minutes counseling Petitioner "on the diagnosis, the spectrum of diseases associated with the SCN1A mutation, [] treatment options, and the ketogenic diet." *Id.* The same day, Petitioner's counsel made the following billing notation: "receive, review

---

[2] This record was filed more than a year later on July 30, 2019. *See* Pet'r's Ex. 37 at 1.
[3] Later records from this exhibit note that Z.E.'s Dravet's syndrome was due to the SCN1A mutation. *E.g.*, Pet'r's Ex. 32 at 223 (noted on September 17, 2018). The record itself was filed nearly a year later on July 17, 2019. *See id.*

and note e-email from client regarding new diagnosis and develop strategy and plan of action." ECF No. 55-2 at 19.

A few months later, on October 30, 2018, I held a status conference to discuss when and where to conduct a hearing. *See* Minute Entry, docketed Oct. 30, 2018. On November 16, 2018, I scheduled an entitlement hearing for October 2019, and a pre-hearing briefing schedule was set. ECF Nos. 28–29.

On April 26, 2019, Petitioner's counsel received medical records from Loma Linda Epilepsy Center. ECF No. 55-2 at 23. Later that day, one of counsel's law clerks discussed the records with a partner at the firm and Petitioner's expert. *Id.* A few days later, the same partner billed for reviewing new records and conferring with their expert about those records and strategy. *Id.*

Petitioner filed two-hundred and two pages of updated medical records on May 6, 2019 – nearly three years after the last medical records had been filed. Pet'r's Exs. 28–31, ECF Nos. 37–38; *see also* Pet'r's Exs. 1–13. One of the exhibits stated that Z.E. had "Dravet's syndrome due to SCN1A mutation."[4] Pet'r's Ex. 28 at 1, 15,  ECF No. 37-1 (records dated February 1, 2019).[5] More than a month later, Petitioner filed her pre-hearing brief on June 24, 2019. Pet'r's Br., ECF No. 39. The pre-hearing brief does not mention Z.E.'s SCN1A mutation or Dravet's syndrome diagnosis. *Id.* at 1–13.

On July 11, 2019, Respondent filed a motion to amend the briefing schedule and suspend his pre-hearing submission deadline. ECF No. 41. Respondent, after examining the new records, asserted that Z.E.'s gene mutation and diagnosis have been found to be the but-for-cause and substantial factor in previous Dravet's syndrome cases. *Id.* (citing *Oliver v. Sec'y of Health & Hum. Servs.*, 900 F.3d 1357 (Fed. Cir. 2018)). Respondent also pointed out that Petitioner's counsel was involved in a SCN1A case in which compensation was denied. *Id.* (citing *Barnette v. Sec'y of Health & Hum. Servs.*, No. 06-868V, 2012 WL 5285414 (Fed. Cl. Spec. Mstr. Sep. 26, 2012), *aff'd*, 110 Fed. Cl. 34 (2013)). Respondent argued that this information was significant to his defense. *Id.* He noted the medical records appeared incomplete and requested that Petitioner file the complete records. *Id.* Therefore, Respondent asked the Court to suspend his pre-hearing brief deadline until the records were filed and his expert had time to review those records. *Id.* at 2. Petitioner did not object to an extension of time but did oppose rescheduling the hearing or indefinitely suspending proceedings. ECF No. 43 at 1–2. Petitioner also stated she would continue to file more records as they came in, but generally defended her handling of the case, and criticized Respondent for taking too much time to review the newly filed records. *Id.* at 1–5.

---

[4] Billing notations indicate that the exhibits were reviewed by a partner before they were filed. ECF No. 55-2 at 23–24.

[5] Billing records suggest—and Respondent alleges—that Petitioner's counsel consulted with Dr. Kinsbourne about these records and Z.E.'s genetic mutation/diagnosis on April 26, 2019. ECF No. 55-2 at 23, 81. After reviewing the billing record, I find that Petitioner's counsel had reviewed and discussed Exhibit 28 with Dr. Kinsbourne on April 26, 2019—significantly, Exhibit 28 notes Z.E.'s SCN1A mutation and diagnosis on the first page. *See* Pet'r's Ex. 28 at 1.

I held a status conference with the parties on July 25, 2019. *See* Minute Entry, docketed Jul. 25, 2019. During the conference, we discussed the new evidence in the case, and Petitioner requested an opportunity to provide additional evidence. ECF No. 45 at 1. I indicated the hearing would go on as scheduled, pending the submission of Petitioner's evidence. *Id.* I also noted that there was a potential "reasonable basis issue moving forward based on the evidence [Petitioner] does or does not submit." *Id.*

Over the next several days, Petitioner filed more than fifteen hundred pages of new medical records. *See* Pet'r's Exs. 33–37, ECF Nos. 46–48. Petitioner filed her motion to dismiss on August 7, 2019. ECF No. 49 at 1. Therein, she conceded that there was not persuasive or sufficient evidence to prove entitlement to compensation. *Id.* Subsequently, on August 16, 2019, I dismissed the petition. *See* ECF No. 50.

### C.  Attorneys' fees and costs application and arguments

Petitioner filed her request for attorneys' fees and costs on September 30, 2019. ECF No. 55-2. She asserted that her claim had reasonable basis throughout its pendency and requested $14,616.58 in costs and $64,345.30 in fees for a total of $78,961.88. *Id.* at 1–2. Later, on October 2, 2020, Petitioner filed a supplement to her original fee application. ECF No. 59. Petitioner amended her request for attorneys' fees and costs and now seeks $68,906.70 in attorneys' fees and $14,622.58 in costs, for a total of $83,529.28. *See id.*

Respondent opposed Petitioner's request on November 14, 2019, for at least fees and costs incurred after April 26, 2019. Resp't's Resp. at 1. Respondent argued that Petitioner's claim lost reasonable basis on April 26, 2019, after the discovery of Z.E.'s SCN1A gene mutation and Dravet's syndrome diagnosis.[6] *Id.* at 5. Respondent based this assertion on several unsuccessful SCN1A/Dravet's syndrome cases in the Program, including one involving Petitioner's counsel and Dr. Kinsbourne. *Id.* at 5–6.

Respondent also argued that Petitioner did not maintain her claim in good faith after her case lost reasonable basis. *Id.* at 7. Respondent reasoned that the claim was not maintained in good faith because Petitioner's counsel continued to prosecute the claim "and bill for, among other things, the preparation and filing of a pre-hearing brief which fails to address Z.E.'s gene mutation and diagnosis." *Id.* Respondent maintained that the omission of this significant information constitutes bad faith. *Id.* at 8–9.

Petitioner replied with several arguments that reasonable basis and good faith continued past April 26, 2019. Pet'r's Reply at 2. Petitioner argued Respondent's arguments "failed to account for the natural circumstances involved with preparing various documents while simultaneously conferring with clients, experts, and medical records personnel, all while maintaining compliance with orders of the Court already in long-standing place." *Id.* First,

---

[6] Respondent also alleged that it is likely Petitioner knew of the diagnosis and mutation as early as August 2, 2018. ECF No. 57 at n.8 (citing ECF No. 55-2 at 19,"billing time to 'receive review and note e-mail from client regarding new diagnosis and develop new strategy and plan of action'"); *see also* Pet'r's Ex. 32 at 191 (noting that Z.E. had SCN1A mutation on July 5, 2018).

4

Petitioner noted that in November 2018, when several pre-hearing deadlines were set, Respondent had not made any objections to reasonable basis or proposed any alternative theories of causation. *Id.* Next, Petitioner argued that Respondent's references to the billing record point to entries made by SRW, a paralegal/law clerk. *Id.* at 3. These discussions related to the need to further "substantiate and investigate the SCN1A issue and the . . . entry that same day related to 'efforts to obtain all medical records.'" *Id.*; *see also id.* at 7. Finally, Petitioner generally argued that their conduct was reasonable in light of how the litigation unfolded. *Id.* at 5–10.

## II.      Legal Standard

### A.   *Prerequisites for receiving attorneys' fees and costs in the Vaccine Program*

In the Vaccine Program, if a petitioner is entitled to compensation then she is automatically awarded reasonable attorneys' fees and costs. § 15(e)(1). When a petitioner is not entitled to compensation, then she may still be awarded reasonable attorneys' fees and costs if the special master finds: (1) the claim was brought with reasonable basis; and (2) the petition was brought in good faith. *Id.*

Reasonable basis is satisfied by objective evidence supporting "the *claim* for which the petition was brought." *Simmons v. Sec'y of Health & Hum. Servs.*, 875 F.3d 632, 636 (Fed. Cir. 2018) (emphasis in original) (holding that an impending statute of limitations deadline was subjective evidence and could not provide reasonable basis for the merits of a claim). Reasonable basis is based on a totality of the circumstances inquiry that can be satisfied by the factual, medical, and jurisdictional support for a claim. *See Cottingham v. Sec'y of Health & Hum. Servs.*, 971 F.3d 1337, 1344–45 (Fed. Cir. 2020); *Chuisano v. Sec'y of Health & Hum. Servs.*, 116 Fed. Cl. 276, 288 (Fed. Cl. 2014). The amount of objective evidence that satisfies reasonable basis is more than a scintilla of evidence but less than preponderant evidence. *Cottingham*, 971 F.3d at 1344–45 (clarifying that "the failure to consider objective evidence presented in support of a reasonable basis for a claim would constitute an abuse of discretion"). Additionally, it can be present when a case is filed and can be lost as more information comes to light. *See Chuisano*, 116 Fed. Cl. at 289.

For example, reasonable basis could be lost when a petitioner's expert report is "unsupported by either medical literature or studies, and therefore, of no value in establishing causation-in-fact." *See Perreira v. Sec'y of Health & Hum. Servs.*, 33 F.3d 1375, 1377 (Fed. Cir. 1994). In other SCN1A cases, special masters have warned that similar claims could lack reasonable basis going forward because of several similar unsuccessful cases. *See, e.g.*, *Oliver v. Sec'y of Health & Hum. Servs.*, No. 10-394V, 2017 WL 747846, at *28 n.63 (Fed. Cl. Spec. Mstr. Feb. 1, 2017) ("[T]here have been at least 15 other Program cases involving alleged vaccine injuries which were found to be attributable to SCN1A mutations. In the absence of further medical and/or scientific developments in such cases, the undersigned is unlikely to be persuaded of vaccine causation. Likewise, the undersigned will be disinclined to find a reasonable basis to compensate the attorneys and/or experts involved in such cases."); *Santini v. Sec'y of Dep't of Health & Hum. Servs.*, No. 06-725V, 2014 WL 7891507, at *20 (Fed. Cl. Dec. 15, 2014) (considering numerous unsuccessful SCN1A cases and warning that "[a]gainst this backdrop, future claims involving an SCN1A mutation may lack a reasonable basis").

Good faith is subjective evidence supporting an honest belief that a vaccine injury occurred. *Simmons*, 875 F.3d at 635; *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). It is, roughly, "'an honest belief, the absence of malice and the absence of design to defraud or to seek an unconscionable advantage.'" *Turner*, 2007 WL 4410030, at *5 (quoting Black's Law Dictionary 623 (5th ed.1979)). It is presumed and can be rebutted by direct evidence of bad faith. *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (Fed. Cl. 1996). It can be present when the petition is filed and can be lost when the claim is not maintained in good faith. *See Perreira*, 33 F.3d at 1377. In *Turner*, the special master found that electronic communication between the petitioner and her counsel, along with coinciding medical records, supported petitioner's honest belief that a vaccine injury had occurred. *Turner*, 2007 WL 4410030, at *6.

### B.   *Dravet's syndrome and SCN1A cases in the Vaccine Program*

SCN1A gene mutations and Dravet's syndrome are not new to the Vaccine Program.[7] *See Oliver*, 2017 WL 747846, at *25 (holding that the "SCN1A mutation—a factor unrelated to the administration of the vaccines—is the agent solely responsible for causing [Petitioner's] Dravet syndrome and resultant neurological injuries"), *mot. for rev. den.*, 133 Fed. Cl. 341 (2017), *aff'd*, 900 F.3d 1357 (Fed. Cir. 2018). Indeed, a litany of cases (from 2011 to the present) have examined the role of SCN1A gene mutations and denied compensation based on the determination that the mutation was the more-likely cause of the purported vaccine injury. *Id.* (discussing several SCN1A–Dravet's syndrome cases); *see also Snyder v. Sec'y of Health & Hum. Servs.*, 553 F. App'x 994 (Fed. Cir. 2014) (unpublished); *Deribeaux v. Sec'y of Health & Hum. Servs.*, 717 F.3d 1363 (Fed. Cir. 2013); *Stone v. Sec'y of Health & Hum. Servs.*, 690 F.3d 1380 (Fed. Cir. 36 2012), *cert. den.*, 133 S. Ct. 2022 (Apr. 29, 2013); *Santini v. Sec'y of Health & Hum. Servs.*, 122 Fed. Cl. 102 (Fed. Cl. 2015); *Barclay v. Sec'y of Health & Hum. Servs.*, 122 Fed. Cl. 189 (Fed. Cl. 2015); *Barnette*, 110 Fed. Cl. at 34.

### III.   **Analysis**

#### A.   *Good faith*

Good faith is, among other things, "the absence of design to defraud or to seek an unconscionable advantage." *Turner*, 2017 WL 747846, at *25. Here, although there was considerable delay in the time between when Petitioner's counsel received Z.E.'s diagnosis and disclosed said records to the Court, I am not prepared to find he acted in bad faith, as Respondent requested. Since a finding of bad faith requires an intentional lack of candor, I do not find that Petitioner's counsel acted in bad faith. I do caution Petitioner's counsel that my finding is largely based on his reputation and history in the Program.

In early July 2018 – two years into the claim's existence – Petitioner received the results of Z.E.'s genetic testing for SCN1A mutations. Pet'r's Ex. 37 at 1. Then, on August 2, 2018, Z.E. was diagnosed with Dravet's syndrome and Dr. Tang-Wai counseled Petitioner for thirty minutes on the diagnosis. Pet'r's Ex. 32 at 65. The same day, counsel made the following billing notation:

---

[7] As noted above, Petitioner's counsel was involved in such a case.

"receive, review and note e-mail from client regarding new diagnosis and develop strategy and plan of action . . . receipt/review, note and respond to e-mail from Chris Webb regarding need for updated records." ECF No. 55-2 at 19. It is clear Petitioner's counsel received evidence of Z.E.'s gene mutation and diagnosis as early as August 2, 2018.

It is likely that if counsel conducted a more thorough review of Z.E.'s records, he would have learned of the dispositive evidence sooner; resulting in a more expedient dismissal of this case. Despite Petitioner's counsel's delay, absent evidence of bad faith, I find that Petitioner's counsel acted in good faith.

However, attorneys are warned that any future cases that involve evidence of a SCN1A gene mutation coupled with a Dravet's syndrome diagnosis, will be deemed dispositive, absent new medical literature that states otherwise. The Court's expectation will be that a petitioner disclose information related to a SCN1A gene mutation and Dravet's syndrome diagnosis as soon as it becomes available. Any delay in disclosing this information will be presumed to be bad faith, and no attorneys' fees or costs will be awarded.

### B.  Reasonable basis

Reasonable basis is satisfied by objective evidence, such as the legal, factual, and medical support for the claim. *See Simmons*, 875 F.3d at 636; *Chuisano*, 116 Fed. Cl. at 288. Here, even though Petitioner's claim was maintained in good faith, I find that the claim lost reasonable basis as of May 6, 2019, because: (1) new evidence of Z.E.'s diagnosis filed on that date presents significant factual, medical, and legal circumstances that indicate Z.E.'s injuries were caused by a factor unrelated to vaccination; and (2) the evidence supporting a reasonable basis for the claim's filing was negated by the subsequent evidence of Z.E.'s diagnosis.

Here, the medical records that were filed on May 6, 2019, clearly attribute Z.E.'s Dravet's syndrome to his SCN1A mutation. It is clear Petitioner was aware of Z.E.'s genetic mutation, diagnosis, and the significance of that mutation, as of May 6, 2019. Notably, Z.E.'s medical history and the factual background in this case share key features of previously unsuccessful cases in the Program. Petitioner alleges that Z.E. developed a fever, seizures, speech/developmental delay, and/or other injuries, as a result of the DTaP, Hepatitis B, PCV, and IPV vaccines Z.E. received on January 31, 2014. These allegations are similar to other unsuccessful Dravet's syndrome cases. For example, in *Deribeaux*, petitioners unsuccessfully alleged that the "DTaP vaccine was a substantial cause of [their child's] seizure disorder and developmental delay." 717 F.3d at 1364–65. Similarly, in *Oliver*, petitioners unsuccessfully alleged that the DTaP, Hepatitis B, PCV, and IPV vaccines caused their son to develop a fever and febrile seizures, continued seizures, and ultimately a chronic complex partial seizure disorder. 2017 WL 747846, at *1. The presence of an SCN1A gene mutation and Dravet's syndrome was the dispositive fact in *Deribeaux, Oliver*, and several other cases. *See supra* Section II.B; *see also Oliver*, 2017 WL 747846, at *1, n.3 (listing at least fifteen other SCN1A mutation cases in the Program in which compensation was denied). The unsuccessful SCN1A cases constitute a substantial body of established caselaw that undermines the basis for Petitioner's claim. *See supra* Section II.B. These unsuccessful cases present legal circumstances that provide persuasive evidence indicating that Z.E.'s injuries were caused by a factor unrelated to vaccination.

7

Furthermore, the new circumstances of this case negated old evidence that supported reasonable basis. For example, Petitioner's expert report and supporting literature, filed before Z.E.'s genetic testing and diagnosis, do not mention SCN1A mutations or Dravet's syndrome. *See* Pet'r's Exs. 1–14. Similarly, Petitioner's affidavits and pre-hearing submissions do not mention Z.E.'s gene mutation and diagnosis. That is not to say that Petitioner had no evidence supporting her claim. For instance, vaccination records and other medical records still showed that Z.E. received the vaccinations in question shortly before Z.E.'s injuries allegedly arose. But, "[r]easonable basis requires presenting more than evidence showing only that the vaccine preceded the onset of the injury for which the petitioner seeks compensation. Temporal proximity is necessary, but not sufficient." *Chuisano*, 116 Fed. Cl. at 287 (internal citations omitted). In sum, in light of Z.E.'s gene mutation and diagnosis, the other evidence in this case no longer supports a reasonable basis for Petitioner's claim.

Petitioner offered no new scientific studies or expert reports to differentiate her case from many other unsuccessful ones. Petitioner received dispositive information in early July and August 2018. This information, once understood, cast serious doubt on Petitioner's claim and eventually lead to the voluntary dismissal of the petition. Despite this, Petitioner and her counsel continued to prosecute her claim as if the information did not exist. They should have proceeded differently and informed the Court sooner than they did—at least by the time medical records were filed on May 6, 2019. Accordingly, I find that Petitioner's claim lost reasonable basis on or around May 6, 2019.

### C.  Petitioner is entitled to modest wind-down costs

Modest fees associated with winding down the case are still permissible even after the date a claim is found to lack reasonable basis or good faith. *See*, e.g., *Butler on behalf of C.B. v. Sec'y of Health & Hum. Servs.*, No. 16-1620V, 2017 WL 3811134, at *3 (Fed. Cl. Spec. Mstr. Aug. 3, 2017) (awarding fees to petitioner's counsel associated with filing a motion to dismiss the petition). This is considered to be fair, because these expenses would be incurred regardless. Accordingly, I award Petitioner reasonable attorneys' fees and costs incurred in winding down this case.

## IV.  Conclusion

Petitioner and her counsel received medical records that indicated Z.E.'s injuries were caused by a factor unrelated to the vaccines Z.E. received. Yet, Petitioner's counsel failed to thoroughly review such records and did not reveal Z.E.'s gene mutation and diagnosis until early May 2019, which sparked this matter's eventual voluntary dismissal.

In most cases, good faith is presumed, and the level of proof required to establish reasonable basis is a low bar. Absent extraordinary circumstances, I am hesitant to find that either has been lost. Yet, here, Petitioner received dispositive evidence that threw her claim into doubt. While the parties do have an obligation of candor to the Court, and fairness to opposing counsel, I do not find that Petitioner's counsel intentionally withheld this evidence. However, such evidence, once filed, negated the reasonable basis for Petitioner's claim.

For the reasons discussed above, I will not award attorneys' fees and costs incurred after May 6, 2019. I will, however, award modest wind-down costs associated with this matter's closing

and dismissal.[8] This results in a total reduction of **$18,978.26.** I find that the rest of Petitioner's requested attorneys' fees and costs are reasonable and compensate Petitioner and her counsel as follows:

| | |
|---|---|
| Attorneys' Fees Requested | $68,906.70 |
| (Reduction to Fees) | - ($18,779.50) |
| **Total Attorneys' Fees Awarded** | **$50,127.20** |
| | |
| Attorneys' Costs Requested | $14,622.58 |
| (Reduction of Costs) | - ($198.76) |
| **Total Attorneys' Costs Awarded** | **$14,423.82** |
| | |
| **Total Attorneys' Fees and Costs** | **$64,551.02** |

Accordingly, I award the total of **$64,551.02** to be issued in the form of a check payable jointly to Petitioner and Petitioner's counsel, Michael G. McLaren, of Black McLaren, PC, for final attorneys' fees and costs.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of the above decision.

   **IT IS SO ORDERED.**

s/Herbrina D. Sanders
Herbrina D. Sanders
Special Master

---

[8] These fees and costs will include compensation for work performed and costs incurred in association with the preparation, filing, and any and all communications involving Petitioner's: 1) motion to dismiss; 2) joint notice not to seek review of my decision dismissing the petition; and 3) fee bill and fee application with replies. I will also compensate Petitioner for the expert services of Dr. Kinsbourne, and for the administrative costs associated with photocopies, PACER service fees, and Federal Express services incurred after May 6, 2019. *See,* e.g., ECF Nos. 55-2 at 32; 59-1 at 3. However, I will not compensate Petitioner for costs associated with obtaining medical records from Loma Linda University after May 6, 2019. ECF No. 55-2 at 32.

The breakdown of these post-May 2019 fees and costs is as follows:

| Time period | Amount requested | Amount awarded |
|---|---|---|
| 06/05/2015-05/06/2019 | $47,354.16 | $47,354.16 |
| 05/07/2019-present | $36,175.12 | $17,196.86 |
| Total | $83,529.28 | $64,551.02 |